# NO. 23-3030

In The

# United States Court Of Appeals
## For The Third Circuit

**LIBBY HILSENRATH,**
on behalf of her minor child, C.H.,

*Appellant,*

**v.**

**SCHOOL DISTRICT OF THE CHATHAMS;**
**BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF THE CHATHAMS;**
**MICHAEL LASUSA, In his official capacity as the Superintendent of the**
**School District of Chathams; KAREN CHASE, In her official capacity as the**
**Assistant Superintendent of Curriculum and Instruction at the**
**School District of the Chathams; JILL GIHORSKI, In her official capacity as the**
**Principal of Chatham Middle School; STEVEN MAHER, In his official capacity**
**as the Supervisor of Social Studies for the School District of the Chathams;**
**MEGAN KEOWN, In her official capacity as a Social Studies teacher for**
**Chatham Middle School; CHRISTINE JAKOWSKI, In her official capacity as a**
**Social Studies teacher for Chatham Middle School.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

### REPLY BRIEF OF APPELLANT

_____

Richard Thompson
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI 48106
(734) 827-2001
rthompson@thomasmore.org

Michael P. Hrycak
ATTORNEY AT LAW
316 Lenox Avenue
Westfield, NJ 07090
(908) 789-1870
michaelhrycak@yahoo.com

*Counsel for Appellant*                    *Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES .................................................... ii

ARGUMENT .......................................................................... 1

I. *KENNEDY* DID NOT VITIATE HILLSENRATH'S STANDING TO BRING AN ESTABLISHMENT CLAUSE CLAIM ...................................... 2

    A. SUPREME COURT PRECEDENT DOES NOT REQUIRE C.H. TO PROVE HE WAS SUBJECTED TO SIGNIFICANT COERCION TO PARTICIPATE IN A RELIGOIUS PRACTICE OR CONFORM TO A PARTICULAR RELIGIOUS BELIEF OR PRACTICE .................................................................... 7

    B. THE IMPERMISSIBLE COERCION HERE WAS SIMILAR TO HISTORICAL HALLMARKS LISTED IN JUSTICE GORSUCH'S CONCURRENCE IN *SHURTLEFF* ........................... 11

    C. CHATHAM SCHOOL BOARD DEMONSTRATED IMPERMISSIBLE FAVORITISM BY PRESENTING ISLAM AS SUPERIOR TO ALL OTHER RELIGIONS ............................... 17

II. DEFENDANT HAS PRESENTED NO CONTEXT THAT TRANSFORMS THE PROSELYTIZING VIDEOS AT ISSUE INTO PROPER CURRICULAR MATERIAL ....................................................... 20

    A. THE SCHOOL BOARD'S RELIGIOUS INSTRUCTION WAS NOT OBJECTIVE ............................................................... 24

CONCLUSION ....................................................................... 27

COMBINED CERTIFICATIONS ......................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Legion v. Am Humanist Ass'n,*
    139 S. Ct. 2067 (2019)..................................................................7, 8

*Berger v. Rensselaer Cent. Sch. Corp.,*
    982 F.2d 1160 (7th Cir. 1993) ...............................................10, 11

*Brown v. Woodland Joint Unified Sch. Dist.,*
    27 F.3d 1373 (9th Cir. 1994) .......................................................24

*Carson v. Makin,*
    142 S. Ct. 1987 (2022).................................................................17

*City of Ocala v. Rojas,*
    143 S. Ct. 764, 215 L. Ed. 2d 143 (2023)......................................5

*Epperson v. Ark.,*
    393 U.S. 97 (1968)...........................................................9, 19, 23

*Everson v. Bd. of Educ.,*
    330 U.S. 1 (1947)........................................................................17

*Fields v. Speaker of the Pa. House of Representatives,*
    936 F.3d 142 (3d Cir. 2019) ..........................................................6

*Frantz v. Gress,*
    359 F. App'x 301 (3d Cir. 2009) ...................................................9

*Garza v. Citigroup Inc.,*
    881 F.3d 277 (3d Cir. 2018) .......................................................12

*Janny v. Gamez,*
    8 F.4th 883 (10th Cir. 2021) .............................................9, 10, 16

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022)............................................................*passim*

*Kerr v. Farrey*,
    95 F.3d 472 (7th Cir. 1996) ...........................................................10

*Larson v. Valente*,
    456 U.S. 228 (1982) .......................................................................17

*Lee v. Weisman*,
    505 U.S. 577 (1992) .................................................................*passim*

*Lozano v. Collier*,
    98 F. 4th 614 (2024) ......................................................................16

*Marsh v. Chambers*,
    463 U.S. 783 (1983) .........................................................................6

*Illinois ex rel. McCollum v. Bd. of Educ.*,
    333 U.S. 203 (1948) .........................................................................9

*McDaniel v. Paty*,
    435 U.S. 618 (1978) .........................................................................9

*Owens v. Kelley*,
    681 F.2d 1362 (11th Cir. 1982) ....................................................10

*Rodrigues de Quijas v. Shearson/Am. Ex. Inc.*,
    490 U.S. 477 (1989) .........................................................................6

*Santa Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000) .......................................................................25

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1963) ...............................................................1, 8, 24

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ..................................................................11, 17

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) .....................................................................4, 6

*Van Orden v. Perry*,
    545 U.S. 677 (2005) .......................................................................19

*Walz v. Egg Harbor Twp. Bd. of Educ.*,
   342 F.3d 271 (3d Cir. 2003) ............................................................26

*Warner v. Orange Cnty. Dep't of Prod.*,
   115 F.3d 1068 (2d Cir. 1996) (reinstated after opinion vacated,
   173 F.3d 120, 121 (2d Cir. 1999) .................................................16

*Zorach v. Clauson*,
   343 U.S. 306 (1952)........................................................................4

## Constitutional Provisions

U.S. Const. amend. I ..........................................................................*passim*

# ARGUMENT

Looking to historical practices and understandings, as *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, (2022) instructs, confirms that the Establishment Clause forbids public schools from teaching religious belief as fact, encouraging students to engage in a particular form of prayer or worship, and encouraging students to change their religious beliefs as Defendant Chatham School Board did in its required curriculum through its use of religious indoctrination videos. *See Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 234 (1963) (Brennan, J., concurring) (recognizing the history of the Establishment Clause "permits little doubt that its prohibition was designed comprehensively to prevent those official involvements of religion which would tend to foster or discourage religious worship or belief").

Defendant's response brief is replete with allegations and arguments that lack support in fact or in law. Its "statement of the case" includes sixty-two separately numbered paragraphs, the majority of which are either disputed, not material or not supported by the evidence cited. What the evidence actually reveals is that C.H. was legally required to attend school, was required to complete the WCG course, and was required as part of that course to watch videos that extolled Islam by presenting its religious beliefs as fact, encouraging Islamic prayer, inviting students to visit a mosque, and encouraging students to "find the true faith, Islam." *See* A435, 437 (videos). Defendant even provided a link to a website via a worksheet posted to

1

Google Classroom that let students know the ease with which they could convert to Islam. A298-299 (Hilsenrath Dep. 129:17-130:4); A526-528 (Pl. Statement of Material Fact "SOMF" 67, 68). No other religions were treated in a similar manner. Contrary to Defendant's unsupported arguments otherwise, the only reason C.H. watched the videos at issue is because he reasonably believed he was required to watch them for homework or his grade could be lowered. *See* A440-441 (WCG Syllabus); A424 (MENA study guide); A416 (Generalizations Presentation); A332-333 (LaSusa Dep. 48:21-49:10); A310 (C.H. Dep. 36:1-4).

C.H. had to either submit to religious indoctrination through the school's curriculum that included these videos or risk receiving a lower grade in the course. This Hobson's choice created impermissible coercion, and the district court was wrong to ignore this evidence or to require proof of "significant coercion" beyond that alleged.

## I.     *KENNEDY* DID NOT VITIATE HILSENRATH'S STANDING TO BRING AN ESTABLISHMENT CLAUSE CLAIM.

The Supreme Court in *Kennedy* held that the Free Exercise Clause protects a school employee's right to engage in private prayer and that the Establishment Clause does not require the government to suppress private religious expression. It did not grant public schools permission to preach religion to students through non-factual religious instruction or proselytizing videos. Defendant misinterprets the *Kennedy* case as requiring direct coercion to participate in a religious activity in all

Establishment Clause cases. Defendant states that "[t]he absence of any evidence that any student was directly coerced into participating in what was unquestionably a religious activity was dispositive in determining that an Establishment Clause violation did not exist." Def. Resp. 25 (citing *Kennedy*, 597 U.S. at 539-540). But the dispositive issue, as discussed in Hilsenrath's opening brief, was that Mr. Kennedy's speech, unlike the curriculum at issue in Hilsenrath's case, was private, not government speech. *See Kennedy*, 597 U.S. at 529. And, unlike in Hilsenrath's case, Mr. Kennedy's speech was not directed at a captive audience of school children who were required to be present and required to listen to his prayers or risk receiving lower grades. *See id*. at 542.

The Supreme Court identified Bremerton School District's "backup" coercion argument as claiming "it was justified in suppressing Mr. Kennedy's religious activity because otherwise it would have been guilty of coercing students to pray. . . And, the District says, coercing worship amounts to an Establishment Clause violation on anyone's account of the Clause's original meaning." *Id*. at 536 (internal citation omitted). The Supreme Court noted that there was "a pretty obvious reason" the Ninth Circuit had not adopted the coercion theory below, stating "[t]he evidence cannot sustain it." *Id*. The Supreme Court, addressing the District's "backup argument" then recognized that it had "long held that government may not, consistent with a historically sensitive understanding of the Establishment Clause,

'make religious observance compulsory.'" *Id*. at 537 (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)). Further, "Government 'may not coerce anyone to attend church'" or "force citizens to engage in 'a formal religious exercise.'" *Id*. (quoting *Zorach*, 343 U.S. at 314 and *Lee v. Weisman*, 505 U.S. 577, 589 (1992)).  Thus, the Court merely recognized that the Bremerton School District's argument that students cannot be coerced to pray is legally correct but was factually unsupported in that case.

Defendant argues that "the significant level of coercion that will suffice to support an Establishment Clause violation is now nothing short of direct coercion to support or conform to another's religious dogma." Def. Resp. 27 (citing *Kennedy*, 597 U.S. at 543; *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). But there is absolutely no support for this sweeping contention in either *Kennedy* or *Town of Greece*. It is clear why the School Board would advocate such an extreme position. Under this view, it is free to present religious indoctrination material without fear of repercussion, and objecting parents and students will have no legal recourse under the Establishment Clause. By adopting this view and rejecting longstanding Supreme Court precedent, Defendant can teach students that one religion is better than all others. It can continue teaching that Islam is the only "true faith" and a cure for racism and segregation by using the Intro to Islam video in its required curriculum, and it can encourage students to specifically engage in Islamic prayer

4

via its Five Pillars video. Fortunately for all who value religious freedom, Defendant's position is not an accurate statement of the law.

Defendant wrongly submits:

> If there was any doubt as to whether the Supreme Court requires direct coercion to support or participate in religion or its exercise, such doubt is dispelled by the Supreme Court's 2023 decision in the case of *City of Ocala, Florida v. Art Rojas*, where the only concrete and particularized injury set forth by the plaintiffs who sued the City for organizing a prayer vigil for victims of a shooting spree was that one of the plaintiff's found the prayers offered at the vigil to be 'offensive' and thus, made her feel as if she was an 'outsider.'

Def. Resp. 27 (citing *Rojas*, 143 S. Ct. 764 (2023)). The opinion Defendant cites consists of one sentence: "The petition for a writ of certiorari is denied." *Rojas*, 143 S. Ct. 764. Defendant quotes Justice Gorsuch's concurrence and offers it as support for its argument as though it is the main opinion and fails to acknowledge it is a concurring opinion to the denial of certiorari, not a binding Supreme Court opinion. *Id*. at 764-65 (Gorsuch, J., concurring). Moreover, Justice Gorsuch's concurring opinion has absolutely nothing to do with the instant case. C.H. is not an "offended observer." *See id*. C.H. was the direct recipient of government speech in the form of public-school curriculum. He, as an impressionable twelve-year-old child, had no real choice but to view religious indoctrination videos as part of a required seventh-grade class. This is obviously not the same as an adult who voluntarily attended a prayer vigil and was offended to hear prayers.

5

The School Board evinces further wishful thinking by claiming *Kennedy* was decided "without regard for the age of the students and therefore, the Supreme Court has now clearly and unequivocally rejected a presumption of susceptibility to conform by 'impressionable' school children to apply in favor of an actual coercion test." Def. Resp. 25 n. 1 (citing *Kennedy*, 597 U.S. at 542). But the Supreme Court does not "clearly and unequivocally" change its longstanding precedent by failing to mention an issue that is not necessary to its decision. *See Rodrigues de Quijas v. Shearson/Am. Ex. Inc*., 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

The Third Circuit in *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142 (3d Cir. 2019) recognized that religion in the school setting is distinct from other government venues stating, "[u]nlike prayer in schools, in the legislative setting 'government officials invoke spiritual inspiration entirely for their own benefit.'" *Id*. at 158-159 (quoting *Lee*, 505 U.S. at 630 n. 8 (Souter, J., concurring)). *Fields* recognized, as the Supreme Court did in *Marsh v. Chambers* and *Town of Greece*, that the Establishment Clause forbids the government from proselytizing even when the principal audience is the lawmakers themselves. *See id.* at 159 (citing *Town of Greece*, 572 U.S. at 585; *Marsh v. Chambers*, 463 U.S. 783, 794-795

(1983)). Thus, it cannot be thought permissible under the same Clause for government to direct proselytizing speech at school children, an audience the Supreme Court has repeatedly recognized as susceptible to coercion and indoctrination. *See Lee*, 505 U.S. at 592 (collecting cases).

### A.    SUPREME COURT PRECEDENT DOES NOT REQUIRE C.H. TO PROVE HE WAS SUBJECTED TO SIGNIFICANT COERCION TO PARTICIPATE IN A RELIGIOUS PRACTICE OR CONFORM TO A PARTICULAR RELIGIOUS BELIEF OR PRACTICE.

Defendant argues that "unless C.H. can point to evidence that he has been coerced in a concrete and direct way to participate in a religious practice or prayer" there is no Establishment Clause violation. Def. Resp. 29. (citing *Kennedy,* 597 U.S. at 542-543, and *American Legion v. Am Humanist Ass'n*, 139 S. Ct. 2067, 2102 (2019) (Gorsuch, J., concurring)). Defendant cites Justice Gorsuch's concurrence as "stating that 'with *Lemon* now shelved . . . only a public school student compelled to recite a prayer will still have standing to sue.'" Def. Resp. 29 (alteration in original). But the portion of the quoted material that the School Board chose to omit completely changes the meaning of the quoted text. What the concurrence actually says is:

> With *Lemon* now shelved, little excuse will remain for the anomaly of offended observer standing, and the gaping hole it tore in standing doctrine in the court of appeals should now begin to close. Nor does this development mean colorable Establishment Clause violations will lack for proper plaintiffs. ***By way of example only,*** a public school student compelled to recite a prayer will still have standing to sue.

*Am. Legion*, 139 S. Ct at 2102 (emphasis added). Notably, the quoted passage from *American Legion* references *Sch. Dist. of Abington Twp.*, 374 U.S. at 224, n. 9 as authority. This footnote states: "the requirements for standing to challenge state action under the Establishment Clause, unlike those relating to the Free Exercise Clause, do not include proof that particular religious freedoms are infringed." And, particularly relevant here, the Supreme Court observed "[t]he parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain." *Id.* (citations omitted).  Thus, it is clear from both the text of *American Legion* cited above and its corresponding citation to *Sch. Dist. of Abington Twp.* that it is not *only* students compelled to recite prayer who have standing under the Establishment Clause.

Next, Defendant claims that C.H. was not "compelled by any words spoken by his teacher to adopt or participate in any school sponsored or approved exercise, observance, or activity that was religious" and lists "prayer, invocation, petition, or lecture about creation science" as examples of religious activity. Def. Resp. 29. There is no requirement that compulsion be spoken by a teacher as opposed to written by or presented by a teacher in a power point presentation, syllabus, or study guide. The School Board approved, as part of teacher created power point lessons and assignments, videos that preach religion and attempt to convert followers.

Preaching and proselytization constitute religious exercise. *See McDaniel v. Paty*, 435 U.S. 618, 626 (1978) ("the right to the free exercise of religion unquestionably encompasses the right to preach, proselyte, and perform other similar religious functions"); *see also Frantz v. Gress*, 359 F. App'x 301, 303 (3d Cir. 2009). C.H. was forced to endure this proselytization as part of a required public school course.

Further, there is no requirement that C.H. be coerced to participate in a formal religious practice to demonstrate a violation of the Establishment Clause. *See, e.g., Illinois ex rel. McCollum v. Bd. of Educ.*, 333 U.S. 203 (1948) (allowing religious groups to provide religious instruction to children in public school during secular class time not permissible); *Epperson v. Ark.*, 393 U.S. 97 (1968) (religiously tailored curriculum not permissible in public school). In *Janny v. Gamez*, 8 F.4th 883, 910 (10th Cir. 2021), the Tenth Circuit held as to an adult parolee, it was error for the district court "to assume that 'merely being compelled to *attend* religious programming,' as opposed to being 'forced to *participate* in such programming,' cannot suffice to establish an Establishment Clause violation." (emphasis in original) (citation omitted). The Tenth Circuit observed, "[f]or purposes of protecting the religious freedom guaranteed by the First Amendment, no distinction is drawn between coerced attendance and coerced participation, or between being forced to listen and being forced to convert." *Id*. Comparable to Hilsenrath's case involving children required to attend school and required to complete the WCG course

including watching proselytizing videos, the Tenth Circuit in *Janny* held "because requiring a parolee 'to adopt religion or to adopt any particular religion would be unconstitutional,' it follows that requiring him 'to submit himself to a course advocating the adoption of religion or a particular religion also transgresses the First Amendment.'" *Id*. (quoting *Owens v. Kelley,* 681 F.2d 1362, 1365 (11th Cir. 1982)). Similarly, the Seventh Circuit in *Kerr v. Farrey*, 95 F.3d 472, 474-475, 479 (7th Cir. 1996) held that requiring inmates to observe Narcotics Anonymous meetings, which uses "the concept of a 'higher being' in their treatment approach" alleged a coercion-based Establishment Clause violation even though inmates were not required to participate in the meetings.

Also relevant is the Seventh Circuit's review of the Establishment Clause issue presented in *Berger v. Rensselaer Cent. Sch. Corp.,* 982 F.2d 1160 (7th Cir. 1993). In *Berger*, the Seventh Circuit determined that a public grade school's decision to allow Gideons to distribute Bibles during school hours violated the Establishment Clause. Although the students were not required to read the Bible and could return them if they were not wanted, students had "no choice but to sit through the Gideons' presentation and distribution of Bibles." *Id*. at 1165-1167. The Seventh Circuit found that "[e]ven if we were to accept defendant's patently unrealistic assertion that the fifth grade students . . . did not feel coerced to accept and read the Gideon version of the Bible, they were still urged by Gideon representatives to study

10

the Christian Bible." *Id*. Similarly here, students in Chatham's seventh-grade WCG course were encouraged by Defendant through the challenged videos to engage in Islamic prayer, visit a mosque, study the Quran, and "find the true faith, Islam." A435, 437 (videos).

**B.    THE IMPERMISSIBLE COERCION HERE WAS SIMILAR TO HISTORICAL HALLMARKS LISTED IN JUSTICE GORSUCH'S CONCURRENCE IN *SHURTLEFF*.**

One of the hallmarks of an establishment of religion described by Justice Gorsuch in *Shurtleff* is that "the government mandated attendance in the established church and punished people for failing to participate" *Shurtleff v. City of Boston,* 596 U.S. 243, 285-286 (2022) (Gorsuch, J. concurring). In C.H.'s case, the government mandated attendance in school and punished people for failing to participate in the required WCG course by lowering a student's grade if they did not complete assignments including watching the religious indoctrination videos at issue. *See* A440-441 (Syllabus).

Contrary to Defendant's arguments otherwise, C.H.'s belief that he was required to watch the Intro to Islam and Five Pillars videos was imminently reasonable as it was confirmed by the written directions on Google Classroom that he "[w]atch this video" and the course syllabus directed him and his parents to use Google Classroom "as the ***primary source of information*** about coursework." A471, A441 (Syllabus) (emphasis added). He also knew from the syllabus that homework

and classwork comprised a significant portion of his grade and that "completion of all assignments is essential and expected in order to be successful in this course." A441 (Syllabus). And the MENA test study guide directed students to "Use slides on Google Classroom to ensure that you have all important information in your notes or on the handouts!" A424.

Apparently recognizing that the MENA study guide is fatal to its claim that students were not required to watch the Intro to Islam and Five Pillars videos, the School Board asserts, without evidence and without ever raising the issue initially in the first round of briefing before the district court, that the study guide for the MENA unit test which includes the name Lukasiewicz in reference to a "note packet handout" "was ostensibly created by a second non-party WCG teacher (Ms. Lukasiewicz) for a different WCG class that C.H. did not attend." Def. Resp. 20. This argument was invented on appeal and is waived. *Garza v. Citigroup Inc.,* 881 F.3d 277, 284 (3d Cir. 2018) (recognizing arguments raised for the first time on appeal are waived). Hilsenrath submitted the MENA study guide as an exhibit to her motion for summary judgment, without objection. A423-424 (Pl. Summ. J. Ex. 13, MENA test study guide). She also responded in opposition to Defendant's statements of material fact in support of their motion for summary judgment by citing the MENA study guide and the School Board did not reply contesting this exhibit. A 503 (Pl. Resp. in Opp'n to Def. Summ. J. at 6); (DE 69-1, Pl. Resp. Def. SOMF 7, 144,

148, 149, 151, 152, 159, 179). Even if it had not been waived, the argument is meritless. The study guide was produced (even though as a part of Defendant's curriculum it would have been in Defendant's control). *See* A343 (LaSusa Dep. 70: 6-8). Ms. Keown testified that instruction materials for the WCG class during the 2016-2017 school year were provided by a team of social study teachers. A150 (Keown Dep. 28:23-29:4). Defendant's own factual allegations recognize some course material was created collaboratively. (Def. Resp. 3, ¶ 6 describing "[t]he Syllabus prepared for the WCG class by Ms. Keown collaboratively with the other WCG teachers"). Ms. Jakowski testified that the seventh-grade social studies team teachers included Stephanie Lukasiewicz. A220 (Jakowski Dep. 11:17-25). And Ms. Jakowski further testified that the Five Pillars of Islam presentation was created through collaborative effort between teachers and included Ms. Lukasiewicz. A225 (Jakowski Dep. 34:5-11).

Defendant misrepresents evidence in an attempt to deny the presence of coercion. For example, Defendant asserts, "C.H. did not interpret any of the videos or instruction he received in his WCG class as sending any type of religious message to conform to Islam, but stated only that *his mother* thought that his "*rights* had been violated." Def. Resp. at 18, ¶ 62 (citing DE 63-3, C.H. Dep. at 70:25-71:14) (emphasis in original). The evidence does not support this statement. C.H. was not asked his interpretation of the videos he watched or about instruction he received in

the WCG course. He was asked specifically about the federal Complaint that was filed by his mother on his behalf, his discussions with his mother about the Complaint, and his understanding of the Establishment Clause claims presented therein. *See* (DE 63-3, C.H. Dep. 70:9-71:9).

Defendant also invents a "fact" that "C.H., understood that, in the absence of any specific instructions from his teacher or an explicit assignment posted under the homework tab on Google Classroom, he was also not expected to complete 'assignments' solely derived from words in PowerPoint slides." Def. Resp. 8, ¶ 24 (citing A228 Jakowski Dep. at 46:8-47:7). The School Board does not offer the testimony of C.H. as to his understanding, rather it relies solely on the testimony of his substitute teacher. There is no evidence that this was C.H.'s understanding or that such a supposed policy, which is contrary to the syllabus and the MENA study guide, was ever explained to him or to any other student. C.H. testified that his homework included watching a video and then taking notes or doing a worksheet. A310 (C.H. Dep. 36:1-4). Hilsenrath testified the videos were homework "because . . . they were imbedded in the Power Points and those were homework on Google Classroom. In order to do the homework, that was part of the homework." A 101 (Hilsenrath Dep. 112:14-21). Additionally, contrary to Defendant's suggestion otherwise, there is no evidence that C.H. could have opted out of "classroom instruction that his mother considered offensive" in the WCG course. *See* Def. Resp. 32.

Next, the School Board tries to deny the existence of coercion by claiming "C.H. was not threatened with any consequences, such as receiving a bad grade, as a result of failing to complete the worksheet, either in class or at home." Def. Resp. 14, ¶ 48. This again is not supported by and misconstrues the evidence. As to the worksheet, C.H. was asked, "Did your teacher make any threats to you about filling this out?" and "Did they tell you that if you didn't complete it you would be punished?" A110 (C.H. Dep. 45:11-16). That C.H. answered "no" does not mean he believed there would be no consequences for not completing his work. The same is true for Defendant's claim that C.H. was not threatened with a lower grade if he did not watch the videos at issue. Def. Resp. 17, ¶ 59. He was informed via the syllabus that completion of coursework and homework was "essential" to success in the class. A441. It ignores reality to suggest a teacher would verbally threaten students with consequences every time an assignment is given.

Finally, Defendant claims that "under the historical framework established in *Kennedy*," that it is "wholly dispositive" that C.H. admitted "after being coerced into viewing and discussing the subject videos at home with his mother, he did not feel pressured to convert to Islam" and he "flatly denied" that watching the Intro to Islam and Five Pillars videos "had the effect of coercing him to subscribe to any of the religious beliefs of Islam." Def. Resp. at 34 (citations omitted). This misrepresents both the holding of *Kennedy* and the record evidence cited. *Kennedy* did not require proof that

coercion led to changed beliefs. And that C.H. denied wanting to convert to Islam after watching the videos does not suggest that he was not improperly coerced. *See Janny*, 8 F.4th at 910; *Warner v. Orange Cnty. Dep't of Prod.*, 115 F.3d 1068, 1076 (2d Cir. 1996) ("The fact that [plaintiff] managed to avoid indoctrination despite the pressure he faced does not make the County's program any less coercive, nor nullify the County's liability.") (reinstated after opinion vacated, 173 F.3d 120, 121 (2d Cir. 1999)).

In *Lozano v. Collier*, 98 F. 4th 614, 627-628 (2024), cited by Amicus, the Fifth Circuit vacated a district court's judgment and remanded for consideration of whether the absence of a Muslim-designated prison dorm violated the Establishment Clause because the lower court had relied on its incorrect conclusion that plaintiff "provided no evidence to support his allegation that the faith-based dorms require inmates to study Christian materials." *Id*. at 627. But the Court found plaintiff had "present[ed] evidence regarding the faith-based dorm's curriculum" and that sworn declarations stated "that the faith-based dorms require inmates to take Christian-based classes." *Id*. at 627-628. The Fifth Circuit then stated "[a]s the Court explained in *Kennedy v. Bremerton*, coercion of religious exercise 'was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment.'" *Id*. at 628 (quoting *Kennedy,* 597 U.S. at 537). Thus, the Fifth Circuit recognized that being forced to take religious curriculum can constitute "coercion of religious exercise." *Id*.

**C.    CHATHAM    SCHOOL    BOARD    DEMONSTRATED IMPERMISSIBLE FAVORITISM BY PRESENTING ISLAM AS SUPERIOR TO ALL OTHER RELIGIONS.**

The government provides financial support in the form of tax dollars to Chatham Public Schools which showed preference for Islam over other faiths, requiring students to endure religious recruitment videos that encouraged Islamic prayer and conversion. This is comparable to a hallmark of an Establishment Clause violation identified by Justice Gorsuch that "the government provided financial support for the established church, often in a way that preferred the established denomination over other churches" *Shurtleff*, 596 U.S. at 285-86 (Gorsuch, J. concurring).

The Supreme Court has emphasized that "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982); *see Everson v. Bd. of Educ.,* 330 U.S. 1, 18 (1947) (recognizing the First Amendment "requires the state to be a neutral in its relations with groups of religious believers and non-believers"). The continuing validity of this command was recently confirmed in *Carson v. Makin*, 142 S. Ct. 1987 (2022), which was decided the same term as *Kennedy*, and cited *Larson* as its authority for the proposition that denominational favoritism is not permissible. *See Carson,* 142 S. Ct. at 2001 (citing *Larson*, 456 U.S. at 244).

17

In an attempt to deny it showed impermissible favoritism, the School Board asserts "Christianity was a topic during the Latin American unit and C.H. recalls learning about 'God' and 'Jesus.' Def. Resp. 4, ¶ 8 (citing A107 C.H. Dep. 26:19-27:4; and A96 Hilsenrath Dep. 40:3-16). Defendant's evidence, however, does not demonstrate Christianity was treated equally. C.H. was asked what he learned about Christianity and replied that he did not "remember much" about the religion. A107 (C.H. Dep. 26:19-22). When asked "About Christianity, who do they believe in?" C.H. responded, "I believe, I remember they believe in God and Jesus." A107 (C.H. Dep. 27:1-4). He could not remember talking about Christianity at all in class. *Id.* at C.H. Dep. 27: 5-7, A303, C.H. Dep. 22:3-5. Additionally, despite the historical and current presence of Jews and Christians in the Middle East and North Africa, Defendant admitted that "the MENA portion of the World Cultures and Geography class does not cover Judaism or Christianity[.]" A81 (Answer ¶ 81).

Defendant further alleges "C.H. was also required to watch two different videos regarding the religious tenets and beliefs of Hindus and Buddhists and took notes on the key tenets of each religion." Def. Resp. 4, ¶ 10. As Hilsenrath has argued, these videos were markedly different than the Intro to Islam and Five Pillars videos because they taught objective factual information and were not proselytizing. Defendant's suggestion otherwise is disingenuous. Notably, Defendant offers no

explanation as to why these videos would be "required" but the videos on Islam allegedly were not.

The Supreme Court has been clear that consistent with the demands of the Establishment Clause, "the State may not adopt programs or practices in its public schools or colleges which 'aid or oppose' any religion" and this absolute prohibition forbids "the preference of a religious doctrine." *Epperson*, 393 U.S. at 106-107; *Lee,* 505 U.S. at 590 ("the central meaning of the Religion Clauses of the First Amendment . . . is that all creeds must be tolerated and none favored"). Chatham School Board showed impermissible preference by requiring its students to watch videos that extol Islam over all other faiths and encourage conversion to the religion. Such teaching that favors one religion leads to social conflict and "religiously based divisiveness," which "the Establishment Clause seeks to avoid." *Van Orden v. Perry*, 545 U.S. 677, 704 (2005) (Breyer, J. concurring). This is of particular concern in the public school context considering the religious diversity of the American public. *See id*. at 703 (recognizing the American public is comprised of "many different religious and comparable nonreligious fundamental beliefs" and contemporary government's "effort to focus attention upon a religious text is certainly likely to prove divisive").

## II.  DEFENDANT HAS PRESENTED NO CONTEXT THAT TRANSFORMS THE PROSELYTIZING VIDEOS AT ISSUE INTO PROPER CURRICULAR MATERIAL.

The Chatham School Board's inclusion of religious recruitment videos in its curriculum for a required seventh-grade class cannot be justified based on any context or accompanying lesson purporting to teach "generalizations" or "critical thinking," as the challenged videos are not relevant to these supposed goals. Although Defendant claims the Intro to Islam video was not included in its seventh-grade teacher's presentation "to instruct students in its contents as though they were religious truths," it fails to explain how students are supposed to glean this from the presentations at issue. *See* Def. Resp. 31. There is no evidence that C.H. was presented with any information to counter the glowingly positive views presented in the videos or to explain that these views were not to be accepted as factual information. Rather, the videos were posted on Google Classroom so students could watch them at home without a teacher available to offer explanation. Indeed, Defendant asserts, Ms. Hilsenrath "was the sole adult responsible for discussing the religious information being presented in the videos." Def. Resp. 33.

As to the worksheet and hyperlink directing students to a website with instructions for conversion, the School Board falsely claims it was "impossible" for C.H. to follow any hyperlinks because he only received a paper copy of the worksheet.  Def. Resp. 13, ¶ 44. Google Classroom contained material that had been

presented in class. *See* Def. Resp. 7, ¶ 20. Consequently, C.H. and other seventh-grade students could access the worksheet including the hyperlink through Google Classroom, which they were required to check as part of the mandatory WCG course. A441 (Syllabus).

The School Board also lists new information regarding the origin of the "general format" of one of the Power Point presentations at issue and suggests the intent of the presentation was to teach students about generalizations. Def. Br. 8, ¶ 26. Defendant relies on the "expert report" of an individual who was never qualified as an expert by the district court and who attempts to provide an "expert" opinion on legal issues including the existence of a secular purpose and the validity of the Complaint. *See*, *e.g.*, A276 (discussing evidence of "valid secular purposes"). The district court did not rely on this report and ultimately it is irrelevant to the matters under consideration. The *Lemon* test asked whether there was a secular purpose for a challenged government action, but now the Court is guided only by the Constitution and historical practices and understandings related to the Establishment Clause. *Kennedy*, 597 U.S. at 535-36.

Defendant further asserts that the Power Point was intended to be utilized for classroom discussion and "required, in part, for students to also assess the credibility of sources by identifying bias and prejudice in documents, media and computer-generated information." Def. Resp. 9, ¶ 28 (citing A407-416 (Generalizations

Presentation), A267 (Unit 4 Lesson Plan 4.5), DE 62-33 (Jakowski Answers to Interrog. 10), DE 62-32 (Keown Answers to Interrog, 5 & 10)). The record does not support this claim. There is no mention in any of the evidence cited about assessing credibility of sources or identifying bias and prejudice.

Additionally, Defendant claims "Middle school students enrolled in the School District of the Chathams are specifically instructed since 3rd grade how to utilize third party websites as sources and to determine the validity and reliability of the information developed by third parties that are posted on a teachers online Google Classroom page." Def. Resp. 7, ¶ 22 (citing A172 (Maher Dep. at 34:19-35:20); DE 62-35 (Def. Resp. to Req. for Admissions 12 & 13)). Again, the record does not support this contention. The evidence cited does not mention third grade nor suggest that students are instructed to verify the validity or reliability of information posted by their teacher on Google Classroom. There is absolutely nothing to suggest that seventh graders were taught that they need to independently verify the accuracy of what their teachers presented to them, whether in class or in Google Classroom, which was treated the same as in-class instruction.

Defendant falsely claims that "the critical thinking goal of the 'generalizations' lesson as presented in the Power Point #1 slides was nonetheless confirmed by C.H. to have been achieved since he admitted to learning that the effect of making generalizations is that, 'most of the time they are not true and that it could

be used to hurt some people.'" Def. Resp. 10, ¶ 33 (citing A307 (C.H. Dep. 33:1-13)). This, once again, misrepresents testimony. C.H. never testified that he learned anything about generalizations from the lessons at issue. He responded "yes" when asked if he recalled being taught about making generalizations. A307 (C.H. Dep. 33:6-8). He was then asked, "what is your understanding of generalizations?" and responded with what he understood the term to mean. A 307 (C.H. Dep. 33: 6-13). At no time, did C.H. attribute his understanding of generalizations to the WCG course, or to anything learned in Chatham's curriculum.

Defendant fails to explain how a video teaching that Islam is a "shining beacon against the darkness of repression, segregation, intolerance and racism" that the Quran is "[d]ivine revelation" and a "Perfect guide for Humanity" and that "Muslims created a tradition of unsurpassable splendor" has anything to do with "generalizations." *See* A53-54 (Compl. ¶ 59), A435, 437 (videos). Rather, these opinion-based religious recruitment videos in the school's curriculum improperly leave students with the misconception that Islam is a problem-free religion and is better than any other religion. *See Epperson*, 393 U.S. at 103-104 ("Government . . . must be neutral in matters of religious theory, doctrine, and practice."). Defendant has failed to identify any corresponding instruction that justifies requiring students to endure the proselytizing speech at issue. Defendant's implication that the videos were necessary to combat negative generalizations of

Muslims only confirms that the statements in the videos were meant to be accepted as fact.

## A.    THE SCHOOL BOARD'S RELIGIOUS INSTRUCTION WAS NOT OBJECTIVE.

The Intro to Islam and Five Pillars videos presented subjective religious statements and beliefs as though they were facts. Such non-objective promotional religious instruction is not permissible in public schools. *See Sch. Dist. of Abington Twp.,* 374 U.S. at 225 ("study of the Bible or of religion, when presented objectively as part of a secular program of education" may be "effected consistently with the First Amendment").

In finding that the School Board's curriculum was "educational, not coercive" the district court compared Hilsenrath's case to the Ninth Circuit's observations regarding Luther's "Ninety-Nine Theses." A19 (Supp. Op. 19, n. 18 (quoting *Brown v. Woodland Joint Unified Sch. Dist.,* 27 F.3d 1373, 1380 (9th Cir. 1994))). The district court noted that the "pronounced and even vehement bias" of Luther's Ninety-Nine Theses does not prevent their legitimate study in history class while learning about the Protestant Reformation. *Id.* But this is not factually comparable to Hilsenrath's case. Chatham students were not studying the statements in the Intro to Islam or Five Pillars videos for their historical relevance or because the people uttering the religious statements were historically significant. There is no allegation that the creators of these videos are religious or political figures or that their opinions

are otherwise noteworthy. Luther is a historical figure whose statements can obviously be studied without offending the Establishment Clause. If, however, a public school included material in one of its required classes describing Luther's Theses in the same manner the Intro to Islam video describes the Islamic religion, as "divine revelation" or a "perfect guide for humanity" and Protestantism as the "true faith" and a "shining beacon against the darkness of repression, segregation, intolerance and racism," then such non-objective and proselytizing statements promoting Protestantism over all other religions would violate the Establishment Clause. *See Lee*, 505 U.S. at 590 ("the central meaning of the Religion Clauses of the First Amendment . . . is that all creeds must be tolerated and none favored"); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 309 (2000) (finding "[s]chool sponsorship of a religious message" impermissible under the Establishment Clause).

Amicus Jewish Coalition for Religious Liberty accepts the district court's disputed factual findings and, taking selected lines of Hilsenrath's opening brief out of context, comes to the mistaken conclusion that Hilsenrath advocates a return to the *Lemon* test and its progeny. *See* Amicus Br. at 19. This is untrue and ignores Hilsenrath's actual arguments and evidence. Amicus suggests that "when schools teach their students basic facts about different religions, they are also teaching young citizens of a diverse nation 'mutual respect and tolerance' in line with 'the best of our traditions.'" *Id*. at 3 (quoting *Kennedy*, 597 U.S. at 514). Amicus further submits

that "[f]or the Jewish community to which *amicus* belongs, the growth of antisemitic rhetoric and violence—much inspired by misinformation and conspiracy theories about Judaism—has heightened the urgency and importance of such education." *Id*. Hilsenrath agrees that factual objective teaching is required, not proselytization or teaching Islam is the "true faith." As Amicus appropriately recognizes, "the Establishment Clause bars many forms of 'coercion,' 'indoctrination' or 'religious preference.'" *Id*. at 20. And this is precisely the type of teaching to which Hilsenrath objects.

A public grade school may not, consistent with the Constitution, encourage religious conversion either directly through employee speech or through third-party videos that are incorporated into its curriculum. *See, Lee*, 505 U.S. at 589 ("preservation and transmission of religious beliefs and worship is a responsibility and a choice committed to the private sphere"); *Walz v. Egg Harbor Twp. Bd. of Educ.,* 342 F.3d 271, 280 (3d Cir. 2003)( "proselytizing speech . . . if permitted, would be at a cross-purposes with [the school's] educational goal and could appear to bear the school's seal of approval").  Hilsenrath's arguments are not at odds with the primary legal position Amicus advances that "the Establishment Clause does not bar education *about* religion." Amicus Br. at 6 (emphasis in original). But Hilsenrath strongly disagrees that Chatham School Board's use of the religious proselytizing videos at issue merely taught *about* religion, rather this non-objective instruction

taught religious belief as fact, treated Islam as superior to all other religions, and encouraged conversion to Islam. Such government-led religious indoctrination of children is at odds with the historical purpose of the Establishment Clause as understood by the Founders.

## CONCLUSION

For the reasons stated herein and in her opening Brief, Plaintiff-Appellant Libby Hilsenrath respectfully requests that this Court reverse the decision of the district court and remand the case for entry of an appropriate judgment which finds that Defendant-Appellee School Board violated C.H.'s rights under the Establishment Clause and awards nominal damages and reasonable attorneys' fees.

Respectfully submitted,

/s/ RICHARD THOMPSON
Richard Thompson
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
(734) 827-2001
rthompson@thomasmore.org

/s/ MICHAEL P. HRYCAK
Michael P. Hrycak, Esq.
316 Lenox Avenue
Westfield, New Jersey 07090
(908) 531-8800
michaelhrycak@yahoo.com

*Attorneys for Plaintiff-Appellant*

## COMBINED CERTIFICATIONS

I, the undersigned, hereby certify the following:

1.      That I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

2.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,479 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

4.      That the text of the electronic and paper versions of the foregoing brief are identical.

5.      That a virus check was performed on this brief using Avast Antivirus Software, and that no virus was indicated.

6.      That, on May 29, 2024, I caused the foregoing to be filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

*/s/ Richard Thompson*
Richard Thompson
THOMAS MORE LAW CENTER

*/s/ Michael P. Hrycak*
Michael P. Hrycak

*Counsel for Appellants*